A06A0207. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. MOSLEY.
A06A0208. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al. v. MOSLEY.
(634 SE2d 466)

BERNES, Judge.

Davetta L. Mosley sued her former employer, Metropolitan Atlanta Rapid Transit Authority ("MARTA"), and her former supervisor, Billy Richards, to recover actual and punitive damages based upon an alleged improper touch by Richards during her employment. She asserted a claim of battery against Richards, claims of negligent

and wrongful retention and failure to provide a safe work environment against MARTA, and a claim of intentional infliction of emotional distress against both defendants.[1] The trial court denied the defendants' motions for summary judgment, from which they both appeal. For the reasons set forth below, we affirm the denial of summary judgment on Mosley's battery claim against Richards and her claim for negligent retention against MARTA, but we reverse the trial court's denial of summary judgment on the intentional infliction of emotional distress and failure to provide a safe work environment claims.

> The standard of review of the denial of a defendant's motion for summary judgment is a de novo review of the evidence of record with all reasonable inferences therefrom viewed in the light most favorable to the nonmoving party. The purpose of the review is to determine whether there remains a question for jury determination as to at least one material fact upon which plaintiff's case rests. . . . If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Citations, punctuation and emphasis omitted.) *Hillcrest Foods v. Kiritsy*, 227 Ga. App. 554, 554-555 (489 SE2d 547) (1997).

So viewed, the facts show that Mosley began working for MARTA as a part-time bus operator in October 1998. She was one of 600 bus operators supervised by Richards, and she had only come into contact with Richards on two occasions prior to the incident in question. According to Mosley, on December 3, 1998, Richards allegedly reached out as though he was going to shake her hand as she entered the dispatch office. They were in the narrow doorway of the office and in the presence of several people. As she took his hand, Richards allegedly spun her toward him so that her backside was compressed against the front of his body, rubbed his hand along her side between her waist and underarm, squeezed her waist, "moaned" and then smiled.[2] The interaction lasted for approximately two seconds, after

---

[1] Mosley originally filed her complaint in the United States District Court for the Northern District of Georgia. In addition to the claims stated above, Mosley asserted that MARTA maintained a sexually hostile work environment and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e. The federal court granted summary judgment to MARTA on the federal claims and dismissed without prejudice the remaining state court claims currently before this Court.

[2] In its recitation of the facts, the trial court described the incident as Richards' having "pressed [Mosley's] buttocks against his penis," a description that he took from Mosley's

which she immediately went outside and called her husband. She then drove her scheduled bus route.

The day after the alleged incident, Mosley filed a complaint with MARTA's Office of Equal Opportunity ("OEO") on the basis that she had been sexually harassed and assaulted by Richards. MARTA's affirmative action administrator conducted an investigation and ultimately found that Richards acknowledged placing his arm around Mosley's shoulders so as to hug her, but denied the remaining allegations. There were no witnesses to the event.[3]

The then-director of the OEO issued a Determination in which she found that Richards had acted improperly by placing his arm around Mosley and recommended the following corrective action: (1) Richards was ordered to cease from demonstrating inappropriate behavior in the workplace; (2) Richards was ordered to be counseled by management as to those behaviors and comments that are unacceptable in the workplace and informed that any further substantiated allegations of sexual misconduct against him would result in termination; (3) Richards was ordered to receive a written reprimand; and (4) Richards was advised to seek counseling through MARTA's Employee Assistance Program. While the first three corrective actions were taken, Richards was directed by his superiors to seek counseling but never actually did. Richards was subsequently transferred to a different garage, and Mosley had no further contact with him after the incident described above.

1. *Battery*. Richards contends that the trial court erred when it denied him summary judgment on Mosley's battery claim. We cannot agree.

> In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable. Generally speaking, an "unlawful" touching is one which is "offensive," and an "offensive" touching is one which proceeds from anger, rudeness, or lust.

---

interrogatory responses. At various other places throughout the record, including in Mosley's deposition and in MARTA's uncontradicted statement of undisputed material facts, Mosley used more innocuous descriptions, indicating only that Richards "pulled her toward him" and their bodies were "compressed." MARTA contends that these descriptions are inconsistent and the trial court thus erred when it did not construe the inconsistencies against Mosley. We do not see the inconsistency. One appears to be simply a more graphic description than the other, and it is our duty, as it was the trial court's duty, to construe the facts in a light most favorable to Mosley. See *Hillcrest Foods*, 227 Ga. App. at 554-555.

[3] While the affirmative action administrator did interview several people in the area of the alleged incident, there is apparently some dispute in the record as to whether Mosley provided him with the names of additional witnesses and/or whether he actually interviewed those witnesses. This determination is irrelevant to our holding.

> The test . . . is what would be offensive to an ordinary person not unduly sensitive as to his dignity.

(Citations and punctuation omitted.) *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672 (1) (347 SE2d 619) (1986). A cause of action for battery "can be supported by even minimal touching." (Citations omitted.) *Darnell v. Houston County Bd. of Ed.*, 234 Ga. App. 488, 490 (1) (506 SE2d 385) (1998).

Although Richards contends that the interaction between him and Mosley was a brief and isolated incident, we cannot say as a matter of law that the alleged touching did not constitute a battery. See OCGA § 51-1-13; *Jarrett v. Butts*, 190 Ga. App. 703, 705 (4) (379 SE2d 583) (1989). Given the relatively low threshold required to prove battery, to hold otherwise would run contrary to our mandate to view all evidence in the light most favorable to Mosley. The trial court did not err in denying Richards' motion for summary judgment on this claim.

2. *Negligent and Wrongful Retention.* MARTA contends that it is entitled to summary judgment on Mosley's claim for negligent and wrongful retention. We must disagree. ·

In a cause of action for negligent retention, "an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (Punctuation and footnote omitted.) *Poole v. North Ga. Conference of the Methodist Church*, 273 Ga. App. 536, 538 (615 SE2d 604) (2005). A claim for negligent retention is necessarily derivative and can only survive summary judgment to the extent that the underlying substantive claims survive the same. See *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (514 SE2d 843) (1999); *Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 167 (1) (381 SE2d 303) (1989).

As stated in Division 1, Mosley has set forth sufficient evidence for her claim of battery to survive summary judgment. It is undisputed that in 1980, a grievance had been filed against Richards by a different employee, Mary E. Ray, based upon Richards' "sexist and demeaning conduct." Richards was apparently counseled at that time and warned that unprofessional behavior would not be tolerated by MARTA. Nonetheless, the record contains an affidavit from Ms. Ray wherein she contends that she met with Richards' supervisor[4] in July

---

[4] While it is unclear from the record when MARTA's sexual harassment policy was adopted, it directs employees who feel as though they are being sexually harassed to report the conduct to "a supervisor, manager, Affirmative Action Administrator, Director of Equal Opportunity, or

1998 and reported to him that "Billy Richards continued to engage in lewd and offensive conduct towards me, including making offensive comments, touching my breasts and groping my body and making comments about sex all the time."[5]

Finally, the record contains an affidavit from Patrice Johnson-Pennington, the former affirmative action administrator in MARTA's OEO, who stated that she had been contacted by Ms. Ray sometime after 1995 and advised that "she had been subjected to inappropriate comments of a sexual nature by Billy Richards."[6] Ms. Johnson-Pennington stated that she met with Richards in response to the allegations, reviewed with him MARTA's sexual harassment policies and counseled him about the inappropriate nature of his comments, and advised him that further inappropriate comments would result in disciplinary action, up to and including termination.

Faced with this evidence, we cannot hold as a matter of law that Mosley failed to put forth evidence countering MARTA's assertion that it had no knowledge of Richards' alleged misbehavior. See *Coleman*, 191 Ga. App. at 171-172 (3). In light of the allegations of continued harassment by Ms. Ray, a jury question has been presented as to whether MARTA responded sufficiently to Ray's complaint and/or whether additional action should have been taken in response to Mosley's accusations. The trial court did not err in denying MARTA's motion for summary judgment on the claim for negligent retention.

3. *Intentional Infliction of Emotional Distress.* Both defendants contend that the trial court erred when it denied them summary judgment on Mosley's claim that they intentionally subjected her to serious emotional distress. We agree.

> Georgia law recognizes the tort of intentional infliction of emotional distress. The burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one, however. Four elements must be present to support a claim of intentional infliction of emotional distress: (1) the

---

the Director of Employee Relations." Accordingly, under this policy, Richards' supervisor was authorized to accept the complaint.

[5] Pretermitting whether the remaining paragraphs contained in Ms. Ray's affidavit are admissible and/or whether the trial court relied upon them in its ruling, the paragraph relied upon by this Court and quoted above satisfies OCGA § 9-11-56 (e) and thus can be considered. See *Manesh v. Baker Equip. Engineering Co.*, 247 Ga. App. 407, 410 (1) (a) (543 SE2d 61) (2000) (the court may consider admissible portions of affidavits while disregarding inadmissible portions).

[6] Ms. Johnson-Pennington stated that at no time did Ms. Ray allege to have been subjected to any physical touching by Richards.

conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe.

(Citations and punctuation omitted.) *Mangrum v. Republic Indus.*, 260 FSupp.2d 1229, 1256 (III) (D) (N.D. Ga. 2003) (applying Georgia law). See also *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 229-230 (1) (335 SE2d 445) (1985).

"Liability for intentional infliction of emotional distress has been found . . . only when a defendant's conduct is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mangrum*, 260 FSupp.2d at 1256 (III) (D) (quoting *Turnbull v. Northside Hosp.*, 220 Ga. App. 883, 884 (470 SE2d 464) (1996)). It is possible that the existence of an employer-employee relationship may produce a character of outrageousness that otherwise might not exist. *Bridges*, 176 Ga. App. at 230 (1). Even in an employment relationship, however, "major outrage in the . . . conduct complained of is essential to the tort." (Punctuation omitted.) Id.

Mosley cannot succeed on her claim for intentional infliction of emotional distress because the conduct of which she complains does not approach the degree of reprehensibility required to establish the prima facie case set forth above. While Richards' alleged conduct was crude and inappropriate, it was an isolated instance that lasted *two seconds*, occurred in public, and was not physically threatening.[7] Accordingly, Richards' alleged misconduct is not actionable under this tort. See *Spivey v. Akstein*, 2005 U.S. Dist. LEXIS 38845, at *72-73 (III) (F) (1) (N.D. Ga. 2005) (applying Georgia law); *Mangrum*, 260 FSupp.2d at 1239, 1256 (III) (D). Compare *Trimble v. Circuit City Stores*, 220 Ga. App. 498 (469 SE2d 776) (1996) (plaintiff's manager's acts of repeated lewd comments, gestures, and unwanted touching, including numerous incidents of rubbing against her body and an occasion wherein he placed his hands down her shirt and told other employees that she did not wear underwear, while at the same time demanding that she work longer hours than the other employees,

---

[7] We find it persuasive that the federal court held that Mosley's sexual harassment claim did not survive summary judgment because Richards' conduct *was not sufficiently severe or pervasive* so as to constitute a hostile or abusive work environment. This standard for a federal sexual harassment claim is lower than the standard of "outrageous" conduct required for intentional infliction of emotional distress. See *Henson v. City of Dundee*, 682 F2d 897, 903-904 (11th Cir. 1982). See also *Draper v. Reynolds*, 278 Ga. App. 401, 403-404 (2) (a) (629 SE2d 476) (2006).

created a jury question when she had complained numerous times to management and no action was taken).[8]

To the extent that Mosley's intentional infliction claim against MARTA relies upon Richards' conduct, the claim fails for the same reasons set forth above.[9] Nor has she alleged any conduct by MARTA itself that would independently rise to the level of intentional infliction of emotional distress.[10]

4. *Failure to Provide a Safe Work Environment.* Mosley asserts that MARTA was negligent in failing to remove Richards and thus breached its duty to provide her with a safe working environment. MARTA argues that the trial court erred in denying it summary judgment on Mosley's claim. We agree.

Mosley has not alleged that Richards ever placed her in fear of her physical safety. The duty imposed upon an employer to provide its employees with a safe working environment "contemplates 'safety' in the physical sense; that is, that the workplace be organized and maintained in such a manner as to minimize the likelihood of *physical injury*." (Emphasis supplied.) *Cline v. McLeod*, 180 Ga. App. 286, 293 (4) (349 SE2d 232) (1986). Because there is no allegation that Richards threatened Mosley's physical safety at any time, her claim cannot survive.

5. *Severance of Trial.* Richards contends the trial court erred in denying his motion to sever the trial of MARTA and Richards. He asserts that Mosley will offer evidence of his prior misconduct to support her negligent retention claim against MARTA, and that such evidence would be inadmissible if he were to be tried separately on the battery count. A trial court has broad discretion in its determination of whether a trial should be severed, "and to reverse we must find a clear and manifest abuse." (Citation omitted.) *Bibb Distrib. Co. v. Stewart*, 238 Ga. App. 650, 657 (8) (b) (519 SE2d 455) (1999). See OCGA § 9-11-42 (b). We find no abuse here.

Richards' argument is misguided because evidence of his alleged prior conduct is not *necessarily* inadmissible in his trial for battery;

---

[8] The trial court erred to the extent that it relied on conduct directed at employees other than Mosley, namely Mary Ray, in support of its denial of summary judgment for intentional infliction of emotional distress. *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 142 (2) (579 SE2d 11) (2003) ("It is well settled that the tortious conduct must have been directed at the plaintiff in order to be actionable under a theory of intentional infliction of emotional distress.") (citations omitted).

[9] For this reason, we need not decide whether vicarious liability may be predicated on alleged sexual misconduct by an employee. See *Travis Pruitt & Assoc. v. Hooper*, 277 Ga. App. 1 (625 SE2d 445) (2005).

[10] The trial court granted Richards summary judgment on Mosley's claim of intentional infliction of emotional distress to the extent that it was based upon conduct other than the touching incident set forth above. It erred by not granting the same to MARTA.

certain acts may be relevant to establish Richards' state of mind. See *Troncalli v. Jones*, 237 Ga. App. 10, 16 (4) (514 SE2d 478) (1999). And even if his prior conduct is not admissible for that purpose, Richards has failed to show that his interests could not be adequately protected by a limiting instruction to the jury. *Thomason v. Harper*, 162 Ga. App. 441, 442-444 (1) (289 SE2d 773) (1982). Accordingly, we find no error in the trial court's denial of his severance motion.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Johnson, P. J., concur. Blackburn, P. J., concurs in the judgment only. Barnes, Miller and Ellington, JJ., concur in part and dissent in part.*

BARNES, Judge, concurring in part and dissenting in part.

While I agree with the result and all that is said in the majority opinion's Divisions 1, 2, 4, and 5, I do not agree that the trial court erred in denying summary judgment to MARTA on Mosley's claim for intentional infliction of emotional harm, and thus I dissent to Division 3.

Considering the record with all reasonable inferences in the light most favorable to Mosley, the respondent to MARTA's motion for summary judgment, I cannot say as a matter of law that Richards' actions do not rise to the level of outrageousness necessary to sustain an action for intentional infliction of emotional harm. Here is Mosley's description of the incident, from her response to an interrogatory:

> Billy Richards opened the office door and called my badge number. As I approached the office, Richards extended his right hand as if to shake my hand. I reached to shake his hand, but when I placed my hand inside his, Richards firmly grasped my hand and pulled me towards him and forcefully twisted my arm, spinning my body around, which forced my [buttocks] to compress against his penis. Then, Richards wrapped his arm around my waist, as he gripped my left side, he squeezed and drew my body into his body more and he moaned. Immediately, I pried my body out of his grip, moved away from him, then turned around to face him; being in shock I tried to speak, saying what are you doing? Richards looked at me and smiled and walked out of the door. I ran to the telephone and called my husband.

This conduct is certainly well beyond the bounds of permissible social interaction between a superior and an employee. Further, we have recognized that "the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise

might not exist." *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985).

> Some claims as a matter of law do not rise to the requisite level of outrageousness and egregiousness. Others raise circumstances which properly put the issue before a jury. *Once the evidence shows that reasonable persons might find the presence of extreme or outrageous conduct, the jury must find the facts and make its own characterization.* This is a case of the latter class.

(Citations omitted; emphasis supplied.) *Gordon v. Frost*, 193 Ga. App. 517, 521 (1) (388 SE2d 362) (1989) (trial court properly denied defendant pharmacist's motion for judgment notwithstanding the verdict on plaintiff customer's claim for intentional infliction of emotional pain as a result of false arrest).

Because I believe that reasonable persons might find Richards' conduct outrageous when he grabbed Mosley, pulled her buttocks against his penis, rubbed her body, and moaned into her ear, I respectfully dissent from Division 3 of the majority opinion.

I am authorized to state that Judge Miller and Judge Ellington join in this opinion.

DECIDED JULY 13, 2006.

*Elizabeth McGrath O'Neill, Gay M. Reid, Robert J. Routman*, for Metropolitan Atlanta Rapid Transit Authority.

*Diana Y. McDonald*, for Mosley.

*Pursley, Lowery & Meeks, John R. Lowery, Norah M. White*, for Richards.